UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*O*

## CIVIL MINUTES - GENERAL

| Case No. | 2:13-cv-08026-CAS(MRWx) | Date | February 3, 2014 |
|---|---|---|---|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS): DEFENDANT'S MOTION TO COMPEL
ARBITRATION (Dkt. 14, filed December 4, 2013)

## I.     INTRODUCTION AND BACKGROUND

On September 27, 2013, plaintiffs Arthur Merkin and James Smith filed this
putative class action in Los Angeles County Superior Court against defendants Vonage
America, Inc. ("Vonage"), and Does1 through 100. In brief, plaintiffs allege that Vonage,
which provides internet telephony services, billed customers for a monthly "Government
Mandated" charge of $4.75 for a "County 911 Fee," despite the fact that no government
agency mandated such a fee.  Compl. ¶¶ 4-6.  Plaintiff asserts claims for (1) violation of
the California Unfair Competition Law, Cal Bus. & Prof. Code §§ 17200, et seq., (2)
obtaining money under false pretenses, in violation of Cal. Penal Code § 496, (3)
violation of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq., (4) fraud,
(5) unjust enrichment, and (6) money had and received.  Plaintiff defines the proposed
class as: "All California residents charged by Vonage for County 911 fees."  Compl. ¶ 16.

On October 30, 2013, Vonage removed this case to this Court pursuant to the Class
Action Fairness Act, 28 U.S.C. § 1332(d).  Subsequently, on December 4, 2013, Vonage
moved to compel arbitration and to dismiss or stay this case.  On December 23, 2013,
plaintiffs filed their opposition, and on January 6, 2014,Vonage replied.  On January 27,
2014, the Court held a hearing.  After considering the parties' arguments, the Court finds
and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          0

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-08026-CAS(MRWx) | Date | February 3, 2014 |
|---|---|---|---|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | |

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "liberal federal policy favoring arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem. Hosp. v. Mecury Constr. Corp., 460 U.S. 1, 24 (1983)).

The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). The court must determine (1) whether there exists a valid agreement to arbitrate; and (2) if there is a valid agreement, whether the dispute falls within its terms. Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000). When determining whether a valid and enforceable contract to arbitrate has been established for the purposes of the FAA, federal courts should apply "ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Circuit City Stores v. Adams, 279 F.3d 889, 892 (2002). "[A]greements to arbitrate [may] be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." AT&T Mobility LLC v. Concepcion, 563 U.S. ----, 131 S. Ct. 1740, 1746 (2011). Concepcion, however, prohibits "discrimination in state policy that is unfavorable to arbitration." Mortensen v. Bresnan Commc'ns, LLC, 722 F.3d 1151, 1160 (9th Cir. 2013).

## III.   DISCUSSION

Vonage seeks to compel arbitration on the basis of an arbitration provision contained within the Vonage Terms of Service ("TOS") agreement. Vonage contends that all customers who sign up for Vonage services are required to agree to the TOS as part of the subscription process, whether that process is performed online at Vonage's website, or over the phone with Vonage sales personnel. Snowden Decl. ¶ 5. The TOS is also available on Vonage's website.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

$O$

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-08026-CAS(MRWx) | Date | February 3, 2014 |
|----------|--------------------------|------|------------------|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | |

Additionally, and of particular importance here, the Vonage TOS has changed repeatedly since plaintiffs Arthur Merkin and James Smith signed up in 2004 and 2006 respectively.  The version of the TOS operative when Merkin signed up on April 29, 2004, for example, provided that Vonage could unilaterally modify the TOS at will:

> 3. CHANGES TO THIS AGREEMENT  Vonage may change the terms and conditions of this Agreement from time to time. Notices will be considered given and effective on the date posted on to the "Service Announcements" section of Vonage's website (currently located at http://www.vonage.com/features_terms_service.php ). Such changes will become binding on Customer, on the date posted to the Vonage website and no further notice by Vonage is required. This Agreement  as posted supersedes all previously agreed to electronic and written terms of service, including without limitation any terms included with the packaging of the Device and also supersedes any written terms provided to Retail Customers in connection with retail distribution, including without limitation any written terms enclosed within the packaging of the Device.

Snowden Decl. Ex. A ("2004 TOS") at 6.  Vonage regularly exercised its authority under this provision to modify the TOS without providing notice to its customers other than posting changes to the TOS on its website.  Since Merkin signed up in 2004, the Vonage TOS has been updated thirty-six times.  Supp. Snowden Decl. ¶ 8.  The current version of the TOS, which was issued on October 1, 2013—four days after plaintiffs commenced this action in Los Angeles County Superior Court—is substantially different in both organization and content from the TOS originally in effect when Merkin signed up in 2004.  See Snowden Decl. Ex. C ("current TOS").  For example, the 2004 TOS contains approximately 7,500 words split into six sections, while the current TOS contains approximately 13,000 words split into eighteen sections.

Despite these differences, however, Vonage represents that all versions of the TOS contain an agreement to arbitrate, as well as a mutual waiver of the right to bring or participate in a class action.  Id. ¶ 9.  The current TOS, for example, provides that:

> Vonage and you agree to arbitrate any and all disputes and claims between you and Vonage.  Arbitration means that all disputes and claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-08026-CAS(MRWx) | Date | February 3, 2014 |
|---|---|---|---|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | |

will be resolved by a neutral arbitrator instead of by a judge or jury in
a court. This agreement to arbitrate is intended to be given the broadest
possible meaning under the law.

Current TOS § 14. Similarly, the current TOS specifies that "YOU AND VONAGE
AGREE THAT YOU AND VONAGE MAY BRING CLAIMS AGAINST THE OTHER
ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF
OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE
PROCEEDING". Id. § 14.8. Vonage contends that this agreement to arbitrate (1)
encompasses plaintiffs' claims against Vonage, and (2) bars plaintiffs from proceeding on
a representative basis.

Plaintiffs resist arbitration on two grounds. First, plaintiffs contend that they never
agreed to Vonage's TOS. Second, plaintiffs contend that Vonage's TOS is
unconscionable, and thus unenforceable under California law. The Court considers each
of these arguments in turn.

### A. Formation of Agreement to Arbitrate

First, plaintiffs argue that they never agreed to the TOS. Specifically, plaintiffs
Merkin and Smith have both submitted declarations stating that they (1) never read the
TOS when registering for Vonage services, and (2) do not recall clicking a button
agreeing to the Vonage terms of service. Merkin Decl. ¶¶ 1-3; Smith Decl. ¶¶ 1-3. As
such, plaintiffs argue, they should not be bound by the terms of the arbitration provision
contained within the TOS.

The Court finds this contention unpersuasive. Vonage has supplied evidence that
"[n]o customer can complete the subscription process or use Vonage's service without
accepting the Terms of Service." Snowden Decl. ¶ 5. Plaintiffs have not controverted
this evidence by, for instance, showing that it is possible to sign up for Vonage services
without assenting to the TOS. Most pertinently, neither Merkin nor Smith state in their
declarations that they did not click on a button agreeing to the TOS. Instead, the most
that Merkin is willing to declare is that "I do not recall ever clicking on an 'I agree to the
Terms of Service' button, or something similar to that, in connection with setting up an
on-line account, but if I did, I did not read the underlying document." See Merkin Decl. ¶
3. But plaintiffs' failure of recollection as to whether or not they agreed to the TOS does

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    0

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-08026-CAS(MRWx) | Date | February 3, 2014 |
|----------|-------------------------|------|------------------|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | |

not create a genuine dispute in light of Vonage's evidence that agreeing to the TOS is required during the registration process.  See Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) ("Only when there is no genuine issue of material fact concerning the formation of an arbitration agreement should a court decide as a matter of law that the parties did or did not enter into such an agreement.").

Nor does plaintiffs' asserted failure to read the TOS mean that they did not agree to the TOS.  As a general rule, failure to read a contract is no defense to claim that contract was formed.  Moreover, courts routinely enforce similar "clickwrap" contracts where the terms are made available to the party assenting to the contract.  See Guadagno v. E*Trade Bank, 592 F. Supp. 2d 1263, 1271 (C.D. Cal.2008) (explaining that a party may be bound by a 'clickwrap' agreement if the terms are clear and acceptance is unambiguous, regardless of whether he actually reads them); see also Inter–Mark USA, Inc. v. Intuit, Inc., 2008 WL 552482, *9 (N.D. Cal. Feb. 27, 2008) (dismissing complaint based upon Software License Agreement and noting that, in addressing whether 'clickwrap' agreements are valid, courts apply "traditional principles of contract law and focus on whether the plaintiff had reasonable notice of and manifested assent to the 'clickwrap' agreement").  Alternatively, to the extent that plaintiffs argue they were unfairly surprised by the terms of the contract, the Court finds that such contentions are best addressed within the analytic framework of unconscionability, rather than contract formation.  As such, the Court finds that plaintiffs agreed to the TOS, and now turns to the question of whether the TOS is enforceable.

### B. Unconscionability.

Second, plaintiffs argue that the TOS, and hence the agreement to arbitrate, is unconscionable under California law.  "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" the FAA.  Kilgore v. KeyBank, Nat. Ass'n, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).

At the outset, the parties contest which version of the TOS is relevant to the unconscionability analysis.  Plaintiffs contend that the Court should focus on the 2004 and 2006 versions of the TOS—the versions of the TOS that were operative when plaintiffs registered with Vonage—because those were the versions of the TOS that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-08026-CAS(MRWx) | Date | February 3, 2014 |
|----------|-------------------------|------|------------------|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | |

plaintiffs putatively agreed to.  Plaintiffs cite as support for this argument the recent California Supreme Court case <u>Sonic-Calabasas A, Inc. v. Moreno</u>, 57 Cal. 4th 1109 (2013), which held that "[i]n determining unconscionability, our inquiry is into whether a contract provision was 'unconscionable at the time it was made.'" <u>Id.</u> at 1134 (citing Cal. Civ. Code § 1670.5 ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable <u>at the time it was made</u> the court may refuse to enforce the contract" (emphasis added))).

Vonage, by contrast, contends that the Court should focus on whether the current TOS is unconscionable.  Vonage points out that, in the event to Court does compel arbitration, that arbitration will be carried out pursuant to the terms of the current TOS. As such, plaintiffs' focus on the 2004 and 2006 versions of the TOS is, in Vonage's view, a "straw man" that distracts from the more "consumer-friendly" arbitration provision contained within the current TOS.[1]  Reply 11.

The Court finds that is not necessary to resolve which version of the TOS controls for purposes of the unconscionability analysis.  Even assuming that Vonage is correct and the current (allegedly more consumer-friendly) TOS is the salient version of the TOS, the Court finds that, for the reasons set forth below, the arbitration agreement contained in

---

[1] For instance, the current TOS provides that arbitration shall take place at a place convenient to the subscriber.  This is more consumer friendly than the 2004 and 2006 versions of the TOS which required that California subscribers arbitrate in New York, New York (2004 TOS) or Somerset, New Jersey (2006 TOS).  <u>Compare</u> Current TOS § 14 <u>with</u> 2004 TOS § 6.1; <u>and</u> 2006 TOS § 5.2.  California courts routinely invalidate as unconscionable arbitration provisions that require consumers to travel cross-country to arbitrate their claims.  <u>See, e.g.</u>, <u>Bolter v. Superior Court</u>, 87 Cal. App. 4th 900, 910 (2001); <u>Comb v. PayPal, Inc.</u>, 218 F. Supp. 2d 1165, 1177 (N.D. Cal. 2002) ("Limiting venue to PayPal's backyard appears to be yet one more means by which the arbitration clause serves to shield PayPal from liability instead of providing a neutral forum in which to arbitrate disputes." (citing <u>Bolter</u>)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    0

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-08026-CAS(MRWx) | Date | February 3, 2014 |
|---|---|---|---|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | |

the current TOS is unconscionable.[2]  Accordingly, the Court assumes, without deciding, that the current TOS governs.

Similarly, Vonage contends that this Court should refer the question of the arbitration provision's unconscionability to an arbitrator.  In support of this argument, Vonage cites Rent-A-Center., West., Inc. v. Jackson, 561 U.S. 63, 133 S. Ct. 2772, 2777 (2010), which concerned the enforceability of a contract specifying that "'[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.'"  The Supreme Court found that the parties were free to delegate questions of unconscionability to an arbitrator, including questions of whether the agreement to arbitrate was itself unconscionable.  The Court explained that, upon determining that parties have agreed to such a "delegation provision," a court "must enforce the delegation provision by compelling arbitration and reserv[e] for the arbitrator issues that implicate the agreement to arbitrate as a whole."  In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig., 838 F. Supp. 2d 967, 982 (C.D. Cal. 2012) (analyzing Rent-A-Center).

Here, however, Vonage's reliance on Rent-A-Center fails at the threshold.  Rent-A-Center only comes into play if the parties have in fact delegated questions of arbitrability to the arbitrator.  But "courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 939 (1995).  In Rent-A-Center, for example, the contract provided such evidence by explicitly stating that the arbitrator would have "exclusive authority to resolve any dispute relating to the . . . enforceability."  See Rent-A-Center, 133 S. Ct. at 2777 n.1 (citing First Options).

By contrast, Vonage has not pointed to any delegation provision in the current TOS that would provide the requisite "clear and unmistakable evidence" that the parties

---

[2] An additional reason for this Court not to decide which version of the TOS governs at this time is that, had this Court determined that arbitration was appropriate, then the question of which version of the TOS applied may well be a matter to be decided by the arbitrator.  See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 400 (1967).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*O*

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-08026-CAS(MRWx) | Date | February 3, 2014 |
|---|---|---|---|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | |

had agreed to delegate questions of arbitrability.  At most, the current TOS contains general language stating that "this agreement to arbitrate is intended to be given the broadest possible meaning under the law."  Current TOS § 14.1.  But this language—unlike the contractual language in Rent-A-Center—does not mention enforceability, unconscionability, or voidability.  Moreover, in light of the carve outs discussed below, the current TOS's assertion that the agreement to arbitrate is "intended to be given the broadest possible meaning under the law" does not accurately reflect the scope of the arbitration agreement.   As such, the Court finds that the current TOS does not contain "clear and unmistakable evidence" of a delegation provision, and thus declines to delegate the question of unconscionability to an arbitrator.  Accordingly, the Court now turns to the analysis of the current TOS under California law of unconscionability.

Under California law, a contract is invalid if it is both procedurally and substantively unconscionable.  Kilgore, 718 F.3d at 1058 (citing Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000)).  These two prongs operate on a sliding scale: greater substantive unconscionability can make up for a lesser showing of procedural unconscionability, and vice versa.  Id.  If the Court determines that provisions of a contract are unconscionable, the Court must decide whether the unconscionable provisions are severable from the rest of the contract.  Id. at 121-122.  The Court considers each of these issues in turn.

1. Procedural Unconscionability

Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement.  Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 783 (9th Cir.2002); A & M Produce Co. v. FMC Corp., 135 Cal. App.3d 473 (1982).  Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in "no real negotiation."  A & M Produce, 135 Cal. App. 3d at 436.  Surprise looks to the extent to which the contract clearly discloses

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*O*

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-08026-CAS(MRWx) | Date | February 3, 2014 |
|---|---|---|---|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | |

its terms as well as the reasonable expectations of the weaker party.  Parada v. Super. Ct., 176 Cal. App. 4th 1554, 1568 (2009).[3]

Here, the Court concludes that the TOS involved a substantial degree of both oppression and surprise.  Beginning with oppression, the parties do not dispute that the TOS is a contract of adhesion.  "The threshold inquiry in California's unconscionability analysis is 'whether the arbitration agreement is adhesive.'"  Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1281 (9th Cir. 2006) (quoting Flores v. Transamerica HomeFirst, Inc., 93 Cal. App. 4th 846, 850 (2001)).  As discussed above, when a prospective Vonage subscriber signs up, he or she is presented with the TOS during the registration process, and "[n]o customer can complete the subscription process or use Vonage's service without accepting the Terms of Service."  Snowden Decl. ¶ 5.  The subscriber is given no opportunity to negotiate the contract: he or she must either accept the TOS in the entirety, or else reject it and forego Vonage services.

Such "take-it-or-leave-it" contracts of adhesion are frequently found to be oppressive under California law.  The California Supreme Court, for instance, has explained that "[o]rdinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced, contain a degree of procedural unconscionability even without any notable surprises, and bear within them the clear danger of oppression and overreaching."  Gentry v. Superior Court, 42 Cal. 4th 443, 469 (2007) (citations and quotations omitted); see also Aral v. EarthLink, Inc., 134 Cal. App. 4th 544, 557 (2005) (finding "quintessential procedural unconscionability" where "the terms of the [arbitration] agreement were presented on a 'take it or leave it' basis . . . with no opportunity to opt out").

---

[3] The Court notes that the application of California law of procedural unconscionability to this case does "not disproportionately affect arbitration agreements, for they focus on the parties and the circumstances of the agreement and apply equally to the formation of all contracts."  Chavarria v. Ralphs Grocery Co., 733 F.3d 916, 926 (9th Cir. 2013); see also Coneff v. AT & T Corp., 673 F.3d 1155, 1161 (9th Cir. 2012) (explaining that the doctrine of procedural unconscionability remains viable subsequent to Concepcion, 131 S. Ct. 1740).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-08026-CAS(MRWx) | Date | February 3, 2014 |
|---|---|---|---|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | |

Vonage resists this conclusion on the grounds that adhesion alone is insufficient to justify a finding of oppression. Reply 14-15. This argument finds some support in the case law. See, e.g., Dean Witter Reynolds, Inc. v. Superior Court, 211 Cal. App. 3d 758 (1989) ("While we recognize significant overlap between the two concepts, we are not prepared to hold that they are identical."). However, the Ninth Circuit very recently reasoned that contracts of adhesion are per se oppressive:

> Whether an arbitration agreement is procedurally unconscionable depends on " 'the manner in which the contract was negotiated and the circumstances of the parties at that time.'" Elemental to this inquiry is whether the agreement "involves oppression or surprise." Defendants concede the arbitration agreement was an adhesion contract. As a result, it is oppressive (and therefore procedurally unconscionable). Surprise is also present, because (1) Newton did not sign the arbitration agreement (it was incorporated by reference); (2) the arbitration agreement was on the reverse side of a one-page document; and the arbitration agreement was in small print. Involving both oppression and surprise, the agreement is procedurally unconscionable.

Newton v. Am. Debt Servs., Inc., --- F. App'x ---, 2013 WL 6501391 at *1 (9th Cir. Dec. 12, 2013) (citations and footnote omitted).

In any event, there are other indicia of oppression here beyond the fact that the TOS is a contract of adhesion. Most important is Vonage's ability to unilaterally modify the TOS. This power—which, as discussed above, was frequently exercised by Vonage—transformed an ordinary contract of adhesion into a contract that gave Vonage the largely unfettered power to control the terms of its relationship with its subscribers. California courts analyzing unconscionability have repeatedly held that the question of oppressiveness turns on the relative balance of bargaining power between the parties. In Olsen v. Breeze, Inc., 48 Cal. App. 4th 608, 621 (1996), for instance, the Court of Appeal explained that "[o]ppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." Here, as a result of Vonage's authority to modify the TOS at will, there is in effect no "balance of bargaining

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-08026-CAS(MRWx) | Date | February 3, 2014 |
|---|---|---|---|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | |

power"; all of the power rests in Vonage's hands.[4]  The Court therefore finds that the TOS involves a high degree of oppression.

Vonage responds by citing a number of cases holding that similar unilateral modification provisions are acceptable under California contract law.  Serpa v. California Sur. Investigations, Inc., 215 Cal. App. 4th 695, 706 (2013), for example, explained "that a provision in an agreement permitting one party to modify contract terms does not, standing alone, render a contract illusory because the party with that authority may not change the agreement in such a manner as to frustrate the purpose of the contract."  See also Badie v. Bank of Am., 67 Cal. App. 4th 779, 791 (1998) ("The contract modification cases cited by the Bank and relied on by the trial court in its statement of decision do not support the proposition that a party with the unilateral right to modify a contract has carte blanche to make any kind of change whatsoever as long as a specified procedure is followed.").  Vonage's reliance on these cases misses the mark.  Serpa and Badie analyzed whether, under general principals of contract law, one party's power to unilaterally modify a contract rendered that contract illusory.  See Serpa, 215 Cal. App. 4th at 706; Badie, 67 Cal. App. 4th at 797.   Here, by contrast, the Court's focus is not on whether Vonage's power to modify the TOS makes the TOS illusory.  Instead, the Court's analysis turns on whether Vonage's actual and repeated modification of the TOS—to the point where the current TOS is in effect a different agreement from the 2004 and 2006 versions of the TOS—"result[ed] in no real negotiation and an absence of meaningful choice," thus making the TOS oppressive.[5]  Olsen, 48 Cal. App. 4th at 621.

---

[4] In this regard, it is telling that Vonage discusses the TOS not as a mutually agreed-upon contract, but instead as the "'rules of the road' [for] using and enjoying the benefits of Vonage [services]."  Reply 2; see also id. at 8 ("Vonage is a business, and any reasonable consumer would expect their relationship to be governed by certain rules."). This view of arbitration as a "rule[] of the road" to be unilaterally imposed on consumers stands in stark tension with the Supreme Court's repeated admonitions that "[a]rbitration under the [FAA] is a matter of consent."  Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989).

[5] Vonage's reliance on Smith v. Americredit Fin. Servs., Inc., 2012 WL 834784, at *4 (S.D. Cal. Mar. 12, 2012); Wallace v. Red Bull Distrib. Co., 2013 WL 3823130 at *11 n.10 (N.D. Ohio July 23, 2013); and  Morgan v. Xerox Corp., 2013 WL 2151656, at *5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*O*

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-08026-CAS(MRWx) | Date | February 3, 2014 |
|----------|--------------------------|------|------------------|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | |

　　　Vonage also argues that the contract is not oppressive because plaintiffs had the option to procure telecommunications services from other providers, and thus had "numerous and meaningful alternatives" to contracting with Vonage. Reply 15. This argument is unpersuasive. For one, Vonage presents no evidence that plaintiffs in fact had meaningful alternatives to agreeing to arbitrate their claims. At most, Vonage presents evidence that the telecommunications market is competitive. See Carter Decl. ¶ 5 (listing alternative telecommunications service providers). But Vonage does not demonstrate that plaintiffs could have procured equivalent telecommunications services from these competitors without being required to sign a similarly restrictive arbitration agreement. Indeed, as Vonage itself points out, "a 'sizable percentage' of [telecommunications and financial services companies] use arbitration clauses in [their] consumer contracts." Reply 15 (citing Christopher R. Drahozal & Stephen J. Ware, Why Do Businesses Use (or Not Use) Arbitration Clauses?, 25:2 Ohio St. J. On Disp. Resol. 433, 434-35 (2010)). Moreover, even if Vonage could provide such evidence, the Ninth Circuit has held that "the potential availability of other . . . opportunities alone does not defeat [a] claim of procedural unconscionability." Nagrampa, 469 F.3d at 1283; see also Shroyer v. New Cingular Wireless Servs., Inc., 498 F.3d 976, 985 (9th Cir. 2007), abrogated on other grounds by Concepcion, 131 S. Ct. 1740 ("[W]e have consistently followed the courts that reject the notion that the existence of 'marketplace alternatives' bars a finding of procedural unconscionability.").

　　　Lastly, Vonage argues that the TOS is not oppressive because a provision in the current TOS gives subscribers the option to opt out of any "substantive change" to the arbitration provision by sending an opt-out notice within thirty days of the time the TOS is modified. See Current TOS § 14.11. The Court finds this contention unpersuasive. As discussed in greater detail below, Vonage did not provide separate notice to its subscribers when modifying the TOS; modifications were instead effective at the time they were posted to the Vonage website. As such, opting out would require a subscriber to constantly monitor the Vonage website for modifications to the TOS in order to ensure that the brief thirty-day window did not elapse. Indeed, Vonage itself appears to admit

---

(E.D. Cal. May 16, 2013), is similarly misplaced. These cases all focused on whether the power of one party to unilaterally modify the contract renders that contract substantively unconscionable. Here, by contrast, the question is whether Vonage's repeated modification of the TOS resulted in significant procedural unconscionability.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-08026-CAS(MRWx) | | Date | February 3, 2014 |
|---|---|---|---|---|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | | |

that no Vonage subscriber has ever availed himself of the thirty-day opt-out. <u>See</u> Supp. Snowden Decl. ¶ 13. In such circumstances, the right to opt-out does not act as a meaningful check on Vonage's power to unilaterally impose modifications on its subscribers and provide subscribers with a meaningful opportunity to avoid the impact of those modifications.

     Accordingly, the Court concludes that the current TOS involves a high degree of oppression, and thus turns to the question of surprise, the second factor in the procedural unconscionability analysis. As an initial matter, surprise is not a necessary prerequisite for procedural unconscionability where, as here, there are indicia of oppressiveness. <u>See Nyulassy v. Lockheed Martin Corp.</u>, 120 Cal. App. 4th 1267, 1281 (2004). Here, however, the Court finds that there are also several indicia of surprise. First, the terms of the arbitration provision are buried within a lengthy contract prepared by Vonage. <u>See A & M Produce Co.</u>, 135 Cal. App. 3d at 486 (1982) ("'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms."). The arbitration provision is located on the sixteenth page of the twenty page current TOS, in the fourteenth of eighteen separate sections. <u>See</u> <u>Bruni v. Didion</u>, 160 Cal. App. 4th 1272, 1293 (2008) ("The arbitration provisions take up roughly one full page in a 30-page booklet."). Similarly, Vonage does not separately provide subscribers with the arbitration agreement; nor do those subscribers separately agree to the arbitration agreement. <u>Cf.</u> <u>Roman v. Superior Court</u>, 172 Cal. App. 4th 1462, 1467 (2009) (finding limited surprise where the agreement to arbitrate was "contained in a separate paragraph initialed" by the plaintiff).

     On the other hand, the current TOS does contain a table of contents, with the arbitration section captioned "Dispute Resolution and Binding Arbitration." Furthermore, the arbitration section itself begins with a bolded instruction stating: "It is important that you read this entire section carefully. This section provides for mandatory resolution of disputes through final and binding arbitration . . ." Current TOS § 14. Accordingly, the text of the current TOS, considered in isolation, would support a finding of some, but not extreme surprise. <u>Cf.</u> <u>Bruni</u>, 160 Cal. App. 4th at 1293 (2008) (finding a "strong showing of surprise" when the "the arbitration provisions are not distinguished from the rest of the booklet by either bolding or capitalization"); <u>Kilgore</u> 718 F.3d at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-08026-CAS(MRWx) | Date | February 3, 2014 |
|---|---|---|---|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | |

1059 ("Nor was the arbitration clause buried in fine print . . . but was instead in its own section, clearly labeled, in boldface.").

However, the finding of surprise is augmented by Vonage's repeated modification of the TOS. Cf. Chavarria, 733 F.3d at 923 ("Further, we have held that the degree of procedural unconscionability is enhanced when a contract binds an individual to later-provided terms."). When viewed from this perspective, the arbitration provision is contained not within the twenty-page current TOS alone, but instead within the current TOS plus the thirty-five other versions of the TOS that Vonage has promulgated since 2004.[6] Even more significantly, Vonage updated its TOS without providing notice to its subscribers. Rather than provide notice, Vonage contends that the modification provisions within the various versions of the TOS made it "the responsibility of the subscriber to keep up-to-date with the current TOS posted on the Vonage website"—revisions were effective on the date that the updated TOS was posted on the Vonage website. Mot. 4. Assuming for the moment that all versions of the TOS were the same length as the current TOS, complying with this "responsibility . . . to keep up-to-date" would require a Vonage subscriber who signed up in 2004 to have read thirty-six versions of the TOS at twenty pages each, or seven hundred and twenty pages of contracts. Moreover, this subscriber would have had to constantly check the Vonage website to ensure that he or she did not miss any new updates to the TOS. In such circumstances, the Court concludes that plaintiffs can legitimately claim to be surprised by the terms of the current TOS.[7]

---

[6] Viewed from another perspective, the arbitration provision in the current TOS was, in effect, incorporated by reference into the original TOS by the modification provision. Cf. Newton, --- F. App'x ---, 2013 WL 6501391 at *1 ("Surprise is also present, because (1) Newton did not sign the arbitration agreement (it was incorporated by reference) . . . .").

[7] Nor can Vonage claim that the fact that the 2004 and 2006 TOS's also contained arbitration clauses placed plaintiffs on notice. First, Vonage itself contends that the current TOS controls for purposes of the unconscionability analysis. Second, given Vonage's authority to unilaterally change the terms of the TOS, the language of previous versions cannot be said to provide meaningful notice of the terms of the TOS thirty-six revisions later.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*O*

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-08026-CAS(MRWx) | Date | February 3, 2014 |
|----------|--------------------------|------|------------------|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | |

Together with the various indicia of surprise surrounding the arbitration provision set forth in the current TOS, the Court finds that plaintiffs have made a strong showing of surprise.  Because the arbitration provision involves high levels of both oppression and surprise, the Court finds a high degree of procedural unconscionability.

2. Substantive unconscionability

Because the Court concludes that the arbitration provision is suffused with a high degree of procedural unconscionability, only a moderate finding of substantive unconscionability is required to render the arbitration provision unconscionable . Armendariz, 24 Cal. 4th at 114.  An arbitration provision is substantively unconscionable if it is "'overly harsh'" or generates "'one-sided' results." Id. (quoting A & M Produce, 135 Cal. App. 3d at 486-87).  California law requires an arbitration agreement to have a "modicum of bilaterality," id. at 117, and arbitration provisions that are "unfairly one-sided" are substantively unconscionable, see Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064, 1071 (2003).  "In assessing substantive unconscionability, the paramount consideration is mutuality." Abramson v. Juniper Networks, Inc., 115 Cal. App. 4th 638, 664 (2004).

Here, the Court finds that the current TOS lacks mutuality.  In particular, although the current TOS purports to require arbitration of "any and all disputes between [the subscriber] and Vonage," the current TOS in fact carves out exceptions for the categories of claims likely to be brought by Vonage:

14.10 Exceptions to Arbitration Agreement:

You and we agree:

(a) you may take your dispute to small claims court, if your dispute qualifies for hearing by such court;

(b) if you fail to timely pay amounts due, we may assign your account for collection, and the collection agency may pursue in court claims limited strictly to the collection of the past due debt and any interest or cost of collection permitted by law or the Agreement;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

$O$

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-08026-CAS(MRWx) | Date | February 3, 2014 |
|----------|--------------------------|------|-------------------|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | |

(c) you or we may take any disputes over the validity of any party's intellectual property rights to a court of competent jurisdiction;

(d) any dispute related to or arising from allegations associated with fraudulent or unauthorized use, theft, or piracy of service may be brought in a court of competent jurisdiction; and

(e) either you or we may seek any interim or preliminary relief from a court of competent jurisdiction, necessary to protect the rights or property of you or Vonage, pending the completion of arbitration.

Current TOS § 14.10.  Subsections (b), (c), and (d) thus except from arbitration collection disputes, intellectual property disputes, and unauthorized use of service disputes. Although these exceptions purport to be bilateral, these are in fact precisely the disputes that are most likely to be brought by Vonage, and least likely to be brought by the subscriber.  Indeed, it is difficult to imagine a claim that Vonage would be likely to bring against a subscriber that does not fall within one of these three categories.  Conversely, it is unlikely that any subscriber would assert a claim involving, for example, "fraudulent or unauthorized use, theft, or piracy of service."[8]

California courts routinely find such one-sided arbitration agreements to be substantively unconscionable.  In Abramson, 115 Cal. App. 4th at 655, for example, the California Court of Appeal found an employment contract unconscionable because "the contractual arbitration clause . . . explicitly excludes all claims that the employer would be likely to assert against the employee."  Similarly, the California Supreme Court in Armendariz, 24 Cal. 4th at 120, held:

---

[8] The current case illustrates the point.  Plaintiffs argue in the alternative that their allegations are not covered by the arbitration agreement because their claims fall within this "theft" exception.  Vonage responds that the § 14.10(d) only excepts claims alleging theft of "service," not theft of "money."  Although the Court finds Vonage's interpretation of § 14.10(d) to be more persuasive, this merely further illustrates the contract's lack of bilaterality: claims likely to be brought by subscribers go to arbitration, while claims likely to be brought by Vonage go to court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-08026-CAS(MRWx) | Date | February 3, 2014 |
|---|---|---|---|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | |

> [A]n arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences. The arbitration agreement in this case lacks mutuality in this sense because it requires the arbitration of employee—but not employer—claims arising out of a wrongful termination. An employee terminated for stealing trade secrets, for example, must arbitrate his or her wrongful termination claim under the agreement while the employer has no corresponding obligation to arbitrate its trade secrets claim against the employee.

See also Chavarria v. Ralphs Grocer Co., 812 F. Supp. 2d 1079, 1086-87 (C.D. Cal. 2011), aff'd, 733 F.3d 916 ("Furthermore, the court is not persuaded that Ralphs is equally likely as one of its employees to request arbitration. Ralphs is the employer of at will employees. The Policy governs claims that are overwhelmingly likely to be raised by an employee—not by an employer."); Andrade v. Superior Court, 2011 WL 1782031, at *9 (Cal. Ct. App. May 10, 2011) ("The agreements challenged here compel arbitration of the claims that plaintiffs are most likely to bring against defendant, while exempting from arbitration the claims that defendant is most likely to bring against plaintiffs."); Mercuro v. Superior Court, 96 Cal. App. 4th 167, 176 (2002) ("Countrywide requires the weaker parties—its employees—to arbitrate their most common claims while choosing to litigate in the courts its own claims against its employees."). Nor has Vonage supplied any justification for these exceptions "grounded in something other than [Vonage's] desire to maximize its advantage." Armendariz, 24 Cal. 4th at 120.

The Court therefore finds that the arbitration provision lacks the requisite "modicum of bilaterality." Id. at 117. Not unlike the recent Ninth Circuit case Chavarria v. Ralphs Grocer Co., 733 F.3d 916, the arbitration provision here purports to mutually bind both parties to arbitration, but instead acts to systematically grant Vonage the forum of their choice. But "[f]ederal law favoring arbitration is not a license to tilt the arbitration process in favor of the party with more bargaining power." Chavarria, 733 F.3d at 927; see also Chavarria, 812 F. Supp. 2d at 1088-89, aff'd, 733 F.3d 916 ("Arbitration is intended to be a fair and efficient means of resolving disputes, not a sham having no modicum of bilaterality." (quotation omitted)). As such, the Court finds

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*O*

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-08026-CAS(MRWx) | Date | February 3, 2014 |
|----------|--------------------------|------|------------------|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | |

that the arbitration provision is substantively unconscionable. Together with the high degree of procedural unconscionability, the Court concludes that the arbitration provision is unconscionable.

      3. Severability.

      Vonage argues in the alternative that, should this Court find any part of the arbitration provision unconscionable, the Court should sever that portion and retain the rest of the arbitration provision. Under California law, "a court has discretion to either sever an unconscionable provision from an agreement, or refuse to enforce the agreement in its entirety." Pokorny v. Quixtar, Inc., 601 F.3d 987, 1005 (9th Cir. 2010). Severence is inappropriate if "the agreement is "permeated" by unconscionability." Lhotka v. Geographic Expeditions, Inc., 181 Cal. App. 4th 816, 826 (2010). "The overarching inquiry is whether the interests of justice would be furthered by severance." Armendariz, 24 Cal. 4th at 124 (quotations omitted).

      Here, the Court finds that severance would not be appropriate, for three reasons. First, the high degree of procedural unconscionability present here taints not just the specific carve-out provision, but also the TOS and arbitration provision more generally. Second, previous versions of the TOS contained a variety of provisions that were likely unconscionable, such as the forum selection provision discussed in footnote 1, supra. See also 2004 TOS § 6.1 (restricting arbitrators ability to award relief); id. § 6.2 (shortened limitations period); cf. Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1178 (9th Cir. 2003) (finding that restrictions on relief and shortened limitations period make agreement to arbitrate unconscionable). This history "indicate[s] a systematic effort to impose arbitration on [subscribers] not simply as an alternative to litigation, but as an inferior forum that works to the [Vonage's] advantage." Armendariz, 24 Cal. 4th at 124. Lastly, Vonage's repeated modifications of the TOS make it difficult, if not impossible, for this Court to "turn back the clock" and determine what the TOS would look like in the absence of the offending provision. In particular, "the doctrine of severance attempts to conserve a contractual relationship." Id. But in light of Vonage's repeated modification of the contract, it is unclear what contractual relationship should be conserved.

      Accordingly, the Court declines to sever the offending provision, and thus finds the entire agreement to arbitrate unconscionable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-08026-CAS(MRWx) | Date | February 3, 2014 |
|---|---|---|---|
| Title | ARTHUR MERKIN ET AL. V. VONAGE AMERICA INC ET AL. | | |

**IV.   CONCLUSION**

In accordance with the foregoing, the Court hereby DENIES Vonage's motion to compel arbitration.

IT IS SO ORDERED.

00:00

Initials of Preparer                    CMJ